```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

David W. Strausser, Sr.            :
    Plaintiff,                   :
    v.                           : Case No. 3:12-CV-1551
Merchants Insurance Group          : (Judge Richard P. Conaboy)
    Defendant.                   :

_____

### Memorandum

The Court considers here Defendant Merchant Insurance Group's Motion for Summary Judgment (Doc. 17) filed September 30, 2013. That motion, which seeks dismissal of the bad faith count of Plaintiff's complaint, has been fully briefed (Docs. 18, 21 and 23) by the parties and is ripe for disposition.

**I.   Background.**

This case was initiated by Complaint (Doc. 1) filed on August 9, 2012. In that complaint, Plaintiff David W. Strausser, Sr. has asserted that Defendant breached its insurance contract with him and violated the Pennsylvania Bad Faith Statute, 42 Pa. C.S.A. § 8371, by failing to promptly and reasonably settle his claim for underinsured ("UIM") motorist benefits.  (Doc. 1 at 5-6).

This case arises from a motor vehicle accident that occurred on December 18, 2007.  (Doc. 1 at 1).  In that accident, Plaintiff alleges that he sustained serious and disabling physical injuries (Doc. 1, ¶ 14).  After receiving payment from the tortfeasor's

1

carrier, Plaintiff made his UIM claim with Defendant, his auto insurer, in January of 2010.  (Doc. 1, ¶¶ 11-12).

Defendant contends that it investigated Plaintiff's UIM claim and discovered "red flags" in the form of Plaintiff's prior accident history and pre-existent financial and psychological problems.  (Doc. 21 at 1-2).  Nevertheless, Defendant asserts that it ultimately agreed to arbitrate the UIM claim as per its insurance contract with Plaintiff.  (Doc. 21 at 2).  Defendant asserts further that it promptly paid the sum awarded by the arbitrator - - $135,000.00 - - in August of 2013 after the arbitrator rendered his decision.  (Doc. 21 at 4).  Defendant also contends that the 43 month delay between Plaintiff's filing of the UIM claim and the issuance of the arbitrator's award was largely the result of the refusal of one of Plaintiff's medical providers to respond to a subpoena.  (Doc. 17-2, ¶¶ 23-41).  Finally, Defendant contends that, for reasons beyond its control, negotiations before a private mediator became protracted due to the mediator's personal emergency.  (Doc. 21 at 3).  Defendant characterizes the parties' impasse as a simple disagreement about the value of Plaintiff's UIM claim.  (Doc. 21 at 2).

Plaintiff counters that Defendant unreasonably complicated the settlement process by requesting 33 separate authorizations and tax returns in piecemeal fashion over a period of many months in 2010 and 2011.  (Doc. 20, ¶¶ 16-21).  Plaintiff argues that one of

2

Plaintiff's medical providers, a psychologist who could not assemble her treatment records because of a computer malfunction, was unreasonably subjected to a lawsuit by the Defendant that resulted in further significant and unnecessary delay in arbitrating Plaintiff's UIM claim.  (Doc. 20, ¶¶ 22-31).  Finally, Plaintiff contends that, despite an exhaustive investigation spanning 4½ years, Defendant never obtained any evidence to support its position that Plaintiff had been disabled before the accident that produced this lawsuit.  (Doc. 20, ¶ 40).

The parties do agree that the case was finally arbitrated in August of 2013 and that the arbitrator awarded the Plaintiff the sum of $135,000.00, almost four (4) times more than the Defendant's best offer to that point.  (Doc. 20, ¶ 38; Doc. 17-2, ¶¶ 45 and 56).  Defendant explains the size of the arbitration award as one of the "vagaries inherent in predicting how a factfinder will respond to a complex set of evidentiary factors."  (Doc. 21 at 7).  Plaintiff points to the sizeable discrepancy between the arbitrator's award and the Defendant's best prior settlement offer as proof that the Defendant acted in bad faith by refusing to make a timely and reasonable offer in settlement.  (Doc. 18 at 6).

**II.  Summary Judgment Standard.**

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of

3

some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson, 477 U.S. at 248).  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party.  Conoshenti v. Public Serv. Elec. & Gas., 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact.  Celotex Corp. V. Catreet, 477 U.S. 317, 330 (1986) (citations omitted).  The moving party may meet this burden by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." Id. at 325.  The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the

4

like in order to demonstrate specific material facts which give rise to a genuine issue.  Id. At 324.

Where underlying facts are in dispute, the facts are viewed in the light most favorable to the non-moving party.  Abramson v. William Patterson College of N.J., 260 F.3d 265, 267 (3d Cir. 2001) (citing Drinkwater v. Union Carbide Corp., 904 F.2d 853, 854 N.1 (3d Cir. 1990).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." Anderson, 477 U.S. at 255.  Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

**III. Legal Analysis.**

The Pennsylvania Bad Faith Statute, 42 PA. C.S.A. § 8371, states:

> In an action arising under an insurance policy, if Court finds that the insurer has acted in bad faith toward the insured, the Court may take all the following actions: (1) award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%; (2) award punitive damages against the insurer; and (3) assess court costs and attorneys fees against the insurer.

5

As a federal court sitting in diversity it is axiomatic that we must apply the substantive law of Pennsylvania here.  The standard for determining whether an insurer has acted in bad faith under Pennsylvania Law has been set forth in a two-part test, both parts of which much be supported with clear and convincing evidence: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded the fact that it lacked such a reasonable basis.  See Terletsky v. Prudential Property and Casualty Insurance Company, 437 Pa. Supra 108, 125 (1994), appeal denied 540 Pa. 641 (1995).  Our circuit has predicted that, should the Pennsylvania Supreme Court actually confront the question of how to determine bad faith, the Pennsylvania Supreme Court would adopt the Terletsky test.  See Klinger v. State Farm Mutual Insurance Company, 115 F.3d 230, 233 (1997).  Accordingly, this Court is compelled to analyze this case under the Terletsky standard.

In order to assess whether the Defendant exhibited bad faith vis-a-vis its insured, it is necessary to review the various communications that passed back and forth between the insurer and Plaintiff's counsel during the negotiations that preceded the filing of the complaint in this matter.  Only in that way can we assess the ultimate question here - - whether, at some point before August 13, 2013, the date the arbitrator awarded $135,000.00 in

recognition of Plaintiff's UIM coverage by the Defendant, the Defendant had enough information to appreciate that its final settlement offer was unreasonably low.

The Court acknowledges that Defendant correctly argues: (1) that its mere negotiation of a disputed claim does not qualify as bad faith (Doc. 21 at 8); (2) that the fact of a substantial discrepancy between an insurer's settlement offer and the amount the insurer ultimately pays on a claim does not, in every such instance, indicate bad faith (Doc. 21 at 9); (3) that it is not always bad faith for an insurer to rely, as Defendant does here, on the results of an independent medical examination (Doc. 21 at 12); (4) that the mere fact that there is a substantial delay between the time the claim is filed and the time it is ultimately resolved does not necessarily indicate bad faith (Doc. 23 at 1-2); and (5) that insurers are not bound by decisions of the Social Security Administration concerning the scope or cause of a claimant's physical disabilities.  (Doc. 23 at 6-7).

Still, the Court must observe that in a situation where, as here, the award approached four (4) times the insurer's best offer and there is evidence that the insurer may have unreasonably delayed its investigation and/or disregarded evidence that should have promoted a higher offer in settlement, only the finder of fact should pass on the relative credibility of the parties' arguments. The Court may not appropriately deprive the Plaintiff of a jury's

7

determination unless it can unequivocally say that the parties' submissions are such that reasonable jurors could conclude only that the Defendant had a reasonable basis for conducting itself as it did.  This the Court cannot do here.

Based on the situation thus far presented to this Court, reasonable jurors could conclude that it was unreasonable for the Defendant to refuse to submit the matter to mediation before obtaining a psychologist's records in the context of a claim predicated predominately on physical injuries.  (See Doc. 1, ¶ 14). Similarly, reasonable jurors could conclude that the Defendant acted unreasonably in relying upon the opinions of an independent medical examiner who never saw the Plaintiff until some 57 months after the accident in question.  Finally, reasonable jurors could conclude that Defendant's piecemeal requests for 33 authorizations over a period of more than one year constituted an effort to pressure Plaintiff into accepting a settlement that bore no resemblance to his actual damages. Because the Court concludes that reasonable jurors might find in Plaintiff's favor on the information thus far made available to the Court, the Court will deny Defendant's Motion for Summary Judgment.  To do otherwise, the Court would have to disregard its responsibility to resolve all doubts and draw all reasonable inferences in favor of the non-moving party as required by Conoshenti, supra.

This conclusion should not be seen as an indication that the

8

Court thinks it likely that Plaintiff will prevail at trial.  As Terletsky, supra, indicates, the Plaintiff will be required to demonstrate Defendant's bad faith by a heightened "clear and convincing" evidentiary standard and the Defendant will have the benefit of that charge at trial.  Nevertheless, because the Court finds that there remain material factual issues in dispute here, a jury must be allowed to make the final determination whether the Defendant conducted itself reasonably in its resolution of this claim.  An Order consistent with this determination will be filed simultaneously herewith.

BY THE COURT

                                            S/Richard P. Conaboy
                                            Honorable Richard P. Conaboy
                                            United States District Court

Dated: April 7, 2014